IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KANAWHA FOREST COALITION, et al.,

          Plaintiffs,

v.                           CIVIL ACTION NO.   2:22-cv-00367

KEYSTONE WV,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are cross-motions for summary judgment filed by Plaintiffs Kanawha Forest Coalition, West Virginia Highlands Conservancy, Inc., Appalachian Voices, and Sierra Club [ECF No. 18] and by Defendant Keystone West Virginia, LLC ("Keystone WV") [ECF No. 20]. Defendant has responded to Plaintiffs' motion [ECF No. 23] and Plaintiff has replied [ECF No. 26]. Likewise, Plaintiffs have responded to Defendant's motion [ECF No. 24] and Defendant has replied [ECF No. 25]. The motions are now ripe for decision. Because the motions and responsive filings raise substantially similar arguments by each party, I will dispose of them together.

Plaintiff organizations filed this case pursuant to the citizen suit provisions of the Clean Water Act ("CWA") and the Surface Mining Control and Reclamation Act ("SMCRA") on behalf of their members, whose use and enjoyment of certain navigable waters has been adversely affected by Defendant's alleged discharge of pollutants

without a permit at Rush Creek Surface Mine No. 2 and KD Surface Mine No. 1 and failure to report certain test results as required by permit for Rush Creek Surface Mine. Defendant does not dispute that until April 14, 2023, it did not have a permit at either Rush Creek Surface Mine No. 2 or KD Surface Mine No. 1. It also does not dispute that it failed to file the required report for Rush Creek Surface Mine from November 2021 through November 2022. Plaintiffs ask the court to declare that Defendant "has violated and is in continuing violation of the CWA and SMCRA," to enjoin Defendant' continuing violations, and to assess civil penalties for the violations already committed. *Id.* ¶¶ 1–7.

For the reasons discussed below, the court hereby **DECLARES** that Defendant Keystone West Virginia, LLC violated both the CWA and SMCRA between November 26, 2021, and April 14, 2023, by discharging pollutants from Rush Creek Surface Mine No. 2 without a valid permit. The court further **DECLARES** that from November 2021 through November 2022, Defendant Keystone West Virginia, LLC violated the CWA and SMCRA by failing to satisfy the reporting requirements of WV/NPDES Permit No. WV1019121 for Rush Creek Surface Mine. The court cannot find, however, that Defendant is in continuing violation of the CWA and SMCRA, as it now has a permit for all outfalls and monitoring stations and is submitting the reports required under that permit. Therefore, injunctive relief is **DENIED** as to Rush Creek Surface Mine No. 2 and Rush Creek Surface Mine. The assessment of civil penalties is to be **HELD IN ABEYANCE** while the court determines the number and

2

severity of Defendant's violations. Plaintiffs' Motion [ECF No. 18] and Defendant's Motion [ECF No. 20] are each **GRANTED in part and DENIED in part.**

## I.     Background

Plaintiffs in this case allege that Defendant "discharged pollutants . . . from multiple unpermitted point sources at the Rush Creek Surface Mine No. 2 and KD Surface Mine No. 1," *id.* ¶ 1, and "failed to report discharges of certain pollutants and certain monitoring results as required by [Defendant's] National Pollutant Discharge Elimination System ("NPDES") Permit for the Rush Creek Surface Mine, WV/NPDES Permit WV1019121," *id.* ¶ 2, in violation of the CWA and SMCRA and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"), W. Va. Code §§ 22-3-1 to -39.

### A.     Regulatory Framework

Permitting for surface coal mining and reclamation requires "navigating an interlocking web of statutes, agencies, and regulations at both the federal and state level." *Ohio Valley Env't Coal. v. U. S. Army Corps of Eng'rs*, No. 2:12-6689, 2014 WL 4102478, at *2 (S.D. W. Va. Aug. 18, 2014). As such, a brief overview of the relevant law is in order.

#### 1.     The CWA

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). "In furtherance of these goals, the CWA bans, among other things, the 'discharge of any pollutant by any person.'" *W. Va. Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159, 162 (4th

Cir. 2010) (quoting 33 U.S.C. § 1311(a)). "On its face, the ban is sweeping in scope: the Act defines 'person' to include not just private individuals and companies but also states and municipalities . . ., and covers 'any addition of any pollutant to navigable waters from any point source.'" *Id.* (first citing 22 U.S.C. § 1362(5); and then quoting 33 U.S.C. § 1362(12)(A)).

"In the coal industry, 'the discharge of . . . pollutant[s]' occurs frequently." *Id.* (citation omitted). "The mining process often contaminates water associated with the mine site (such as stormwater or wastewater)" with pollutants, creating "acid mine drainage." *Id.* "Of course, the CWA does not set out to ban coal mining." *Id.* Instead, Congress carved out exceptions to the CWA's broad prohibitions, including or discharges that comply with a National Pollutant Discharge Elimination System ("NPDES") Permit. 33 U.S.C. § 1342; *see Nat'l Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 696 n.8 (D.C. Cir. 1975) (holding that "compliance with the permit program is a prerequisite to lawful discharge of pollutants").

"Under the NPDES, the U.S. Environmental Protection Agency ("EPA") or an authorized state agency can issue a permit for the discharge of any pollutant, provided that the discharge complies with the conditions of the CWA." *Ohio Valley Env't Coal., Inc. v. Fola Coal Co.*, No. 2:12-3750, 2013 WL 6709957, at *1 (S.D. W. Va. Dec. 19, 2013) (citing 33 U.S.C. § 1342). West Virginia administers a state-run NPDES program through the West Virginia Department of Environmental Protection ("WVDEP"). *Id.* All discharges covered by a West Virginia NPDES permit "are to be of such quality so as not to cause violation of applicable water quality

standards promulgated by W. Va. Code R. § 47-2." *Id.* (quoting W. Va. Code R. § 47-30-5.1.f.) (internal markings omitted).[1] State-issued NPDES permits must also "mandate, *inter alia*, compliance with the inspection, reporting, and monitoring requirements of the [CWA] as outlined in 33 U.S.C. § 1318." *Menzel v. County Utils. Corp.*, 712 F.2d 91, 94 (1983) (citing 33 U.S.C. § 1342(b)(2)).

The CWA allows citizens adversely affected by another's violations to bring an enforcement action in federal court. 33 U.S.C. § 1365. Any person who violates the CWA or any condition or limitation in a permit issued pursuant to the Act shall be subject to a civil penalty payable to the United States. 33 U.S.C. § 1319(d). This penalty is currently capped at $64,618 per day for each violation. *Id.*; 40 C.F.R. § 19.4.[2] In addition to civil penalties, the court may also award "costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate." 33 U.S.C. § 1365(d).

2.     The SMCRA

Coal mining operations, including reclamation work, are also subject to regulation under the SMCRA. 30 U.S.C. §§ 1202-1328. This law was enacted to "strike

---

[1] The state is required to set water quality standards that "protect the public health or welfare, [and] enhance the quality of water" and "shall be established taking into consideration their use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes, and also taking into consideration their use and value for navigation." 33 U.S.C. § 1313(c)(2)(A). Each standard "shall consist of the designated uses of the navigable waters involved and the water quality for such waters based upon such uses." *Id.*

[2] The text of the CWA itself caps the penalty at $25,000 per day for each violation, but the Federal Civil Penalties Adjustment Act sets forth updated maximum penalties that have been adjusted for inflation. *See* 28 U.S.C. § 2461; 40 C.F.R. § 19.4.

a balance between the nation's interests in protecting the environment from the adverse effects of surface coal mining and in assuring the coal supply essential to the nation's energy requirements." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 288 (4th Cir. 2001) (citing 30 U.S.C. § 1205(a), (d) and (f)). As such, the SMCRA "prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement (OSMRE) or an authorized state agency." *Fola Coal Co.*, 2013 WL 6709957, at *2. Additionally, discharges from surface mining activities must be "in compliance with all applicable State and Federal water quality laws and regulations . . . ." 30 C.F.R. § 816.42. The SMCRA also contains a citizen-suit provision authorizing any person adversely affected to bring an action in federal court to compel compliance with the Act. 30 U.S.C. § 1270(a)(1).

Although both the CWA and SMCRA have similar performance standards and citizen-suit provisions, "[t]he scheme under the SMCRA is somewhat different from the CWA, exhibiting greater deference to the states," *Ohio Valley Env't Coal. v. Coal-Mac, Inc.*, 775 F. Supp. 2d 900, 904 (S.D. W. Va. 2011), through reliance on "a program of cooperative federalism that allows States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." *Molinary v. Powell Mountain Coal Co., Inc.*, 125 F.3d 231, 234 (1997) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 289 (1981), *overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985)). Under 30 U.S.C. § 1253(a), a state that

6

meets statutory requirements may "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations." This exclusive state regulatory authority, if granted, is commonly referred to as "primacy." *Ohio Valley Env't Coal., Inc. v. Apogee Coal Co.*, 531 F. Supp. 2d 747, 760 (S.D. W. Va. 2008) (citing *Bragg*, 248 F.3d at 289).

### 3. The WVSCMRA

"West Virginia was granted primacy in 1981 after developing a suitable regulatory program." *Id.* (citing *Bragg*, 248 F.3d at 289). The State's surface mining permit program is administered through the WVDEP pursuant to the WVSCMRA, W. Va. Code §§ 22-3-1 to -39, and "closely parallels the provisions of the federal [SMCRA]." *Apogee Coal Co.*, 531 F. Supp. 2d at 761. For instance, "[r]egulations passed pursuant to the WVSCMRA require permittees to comply with the terms and conditions of their permits and all applicable performance standards." *Fola Coal Co.*, 2013 WL 6709957, at *2 (citing W. Va Code R. § 38-2-3.33.c.). These standards require that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." W. Va. Code R. § 38-2-14.5.b. Violations of the WVSCMRA may result in "[c]ivil penalties appropriate to the violation and injunctive relief in accordance with W. Va. Code § 22-11-22." W. Va. Code R. §47-30-15.1.b.

### B. Factual History

Plaintiffs in this case are non-profit environmental organizations whose members "use, enjoy, and benefit from the water quality" in certain creeks and

tributaries in the Southern District of West Virginia and have been injured by Defendant's alleged violations of the CWA, SMCRA, and WVSCMRA. [ECF No. 1, ¶¶ 10–14]. Defendant is a West Virginia limited liability company whose stated "sole purpose" is "to reclaim [certain surface mining] properties and bring them into compliance with applicable environmental rules and regulations." [ECF No. 21, ¶ 1].

There are three mine sites at issue in this case: (1) Rush Creek Surface Mine, (2) Rush Creek Surface Mine No. 2, and (3) KD Surface Mine No. 1 (collectively, the "Properties"). [ECF No. 1, ¶¶ 1–2]. Each of the Properties is owned by Tom Scholl, who "was the operator of the mining company—Keystone Industries, LLC ("Keystone Industries")—that was previously the permittee at the mines" and "accrued numerous violations of state and federal mining laws related to water quality." [ECF No. 26, at 11; ECF No. 24-3]. Mr. Scholl also appears to be the sole member of the Defendant company, Keystone WV. [ECF No. 24-4]. After Defendant's predecessor in interest, Revelation Energy, filed for bankruptcy in 2019, the mines on the Properties were abandoned and in need of reclamation. [ECF No. 23, at 2].

On or about March 24, 2021, Mr. Scholl executed a lease of the Properties, granting Defendant the legal right to enter the Properties and conduct surface coal mining operations, including reclamation work.[3]  At the time the lease was executed,

---

[3] I take judicial notice of this information from Defendant's June 7, 2021, reinstatement application for SMCRA Permit No. S300499—a public record available at the WVDEP's Division of Mining and Reclamation portal—the trueness and correctness of which Tom L. Scholl, as Member of Keystone WV, attested to in the Certification of Application on file. *Permit Search*, W. Va. Dep't of Envt. Prot., https://dep.wv.gov/dmr/Pages/PermitSearch.aspx (follow "Electronic Submission System Public Query" hyperlink; then enter "Keystone" into "Identify Applicant" field; then click "Go"; and then scroll to find XXXX) (last visited Sept. 20, 2023).

five of the six permits originally issued for the Properties had either expired or been revoked by the State. [ECF No. 1, ¶¶ 33–37, 45–49, 58–63]. Although not dispositive, a brief history of the permits for each mine site is helpful in analyzing Plaintiffs' claims.

        1.    <u>Rush Creek Surface Mine</u>

        *a.*    *SMCRA Permit No. S300499*

SMCRA Permit No. S300499 was first issued to Keystone Industries on April 18, 2001. [ECF No. 1, ¶ 59]. On September 6, 2013, it was transferred to Revelation Energy. *Id.* After Revelation Energy filed for bankruptcy in 2019, the permit was revoked on October 22, 2020, for failure to comply with statutory requirements.[4] *Id.* On October 27, 2021, the WVDEP reinstated the permit upon application by Defendant Keystone WV and transferred it to Defendant. *Id.* ¶ 60. It remains in effect to date.

        *b.*    *WV/NPDES Permit No. WV1019121*

WV/NPDES[5] Permit No. WV1019121 was originally issued to Keystone Industries on April 27, 2001. *Id.* ¶ 61. It was transferred to Revelation Energy on September 6, 2013, and reissued on April 19, 2018. *Id.* ¶¶ 61–62. On November 10, 2021, it was transferred to Defendant Keystone WV and was set to expire on April 17, 2023. *Id.* ¶¶ 62–63. On April 14, 2023, upon application from Defendant, the

---

[4] This noncompliance is further discussed later in this opinion when I address the merits of Plaintiffs' claims.

[5] Plaintiffs refer to these permits interchangeably as "WV/NPDES Permit" and "CWA/NPDES Permit." For clarity, I will use the former term to describe all NPDES permits issued by the State of West Virginia.

permit was modified to include "all outlets, biological monitoring stations, and stream monitoring stations" from WV/NPDES Permit Nos. WV1021745 and WV1021877, permits for the other two mine sites discussed below. [ECF No. 19 at 8]. This permit has never expired and remains in effect to date.

2.   Rush Creek Mine No. 2

a.   *SMCRA Permit No. S300404*

SMCRA Permit No. S300404 was first issued to Keystone Industries on April 3, 2006. [ECF No. 1, ¶ 34]. On July 7, 2013, it was transferred to Revelation Energy, before being revoked on October 22, 2020, for failure to comply with statutory requirements. *Id.* On October 27, 2021, the WVDEP reinstated the permit and transferred it to Defendant Keystone WV. *Id.* ¶ 35. It remains in effect to date.

b.   *WV/NPDES Permit No. WV1021745*

WV/NPDES Permit No. WV1021745 was originally issued to Keystone Industries on May 8, 2006. *Id.* ¶ 36. It was then transferred to Revelation Energy on March 27, 2015, and expired on March 8, 2020. *Id.* ¶¶ 36–37. When Permit No. 1019121 from Rush Creek Surface Mine was modified on April 14, 2023, "all outlets, biological monitoring stations, and stream monitoring stations" from Permit No.

10

WV1021745 were transferred to Permit No. 1019121. [ECF No. 19, at 8]. Permit No. WV1021745 has not been reissued and remains expired.

### 3.   KD Surface Mine No. 1

#### a.   *SMCRA Permit No. S300905*

SMCRA Permit No. S300905 was first issued to Keystone Industries on August 31, 2006. [ECF No. 1, ¶ 46]. On July 17, 2013, it was transferred to Revelation Energy, before being revoked on October 22, 2020, for failure to comply with statutory requirements. *Id.* On October 27, 2021, the WVDEP reinstated the permit and transferred it to Defendant. *Id.* ¶ 47. It remains in effect to date.

#### b.   *WV/NPDES Permit No. 1021877*

WV/NPDES Permit No. WV1021877 was originally issued to Keystone Industries on May 8, 2006. *Id.* ¶ 48. It was transferred to Revelation Energy on March 27, 2015, and expired on August 26, 2020. *Id.* ¶¶ 48–49. When Rush Creek Surface Mine Permit No. 1019121 was modified on April 14, 2023, "all outlets, biological monitoring stations, and stream monitoring stations" from Permit No. WV1021877 were transferred to Permit No. 1019121. [ECF No. 19, at 8]. Permit No. WV1021877 has not been reissued and remains expired.

On November 26, 2021—after all SMCRA permits had been reinstated and transferred to Defendant but prior to the modification of WV/NPDES Permit No. 1019121—Defendant executed a Reclamation Transition Agreement (the "Agreement") with the WVDEP. [ECF No. 21-1]. As part of this Agreement,

11

Defendant promised to "implement certain reclamation plans and work on certain Permits to address and remedy prior and currently unresolved violation conditions." *Id.* at 1. Both Defendant and the WVDEP acknowledged in the Agreement that "time [was] of the essence." *Id.* ¶ 2. Further, the Agreement specifically states that "Keystone WV shall perform or provide the services under the Reclamation Transition Plan *in accordance with all applicable laws . . . . Nothing herein shall be construed to relieve Keystone WV from the obligation to comply with all applicable legal requirements.*" *Id.* ¶ 4 (emphasis added).

Pursuant to the Agreement, Defendant filed an application on November 30, 2021, for modification of its WV/NPDES Permit No. WV1019121 (Major Modification No. 13) to include "all outlets, biological monitoring stations, and stream monitoring stations" from WV/NPDES Permit Nos. WV1021745 and WV1021877. [ECF No. 19 at 8]. At the time, neither Rush Creek Surface Mine No. 2 nor KD Surface Mine No. 1 had an active NPDES permit. [ECF No. 1, ¶¶ 37, 49]. The modification process took over fourteen months, during which time the outlets and monitoring stations at those mines remained unpermitted under the CWA until Major Modification No. 13 for Permit No. WV1019121 was eventually issued on April 14, 2023. [ECF No. 19, at 8].

## C. Procedural History

On February 15, 2022, while Defendant's modification application remained pending, Plaintiffs provided Defendant, the EPA, and the WVDEP with notice of their allegations and intent to file suit as required by the CWA. [ECF No. 1, ¶ 5 (citing 33 U.S.C. § 1365(b)(1)(A))]. On that same date, Plaintiffs also provided notice of their

12

intent to sue, as required under the SMCRA, 30 U.S.C. § 1270(b)(1)(A), to Defendant, the OSMRE, the U.S. Department of the Interior, and the WVDEP. [ECF No. 1, ¶ 5]. No state or federal agency commenced a civil or criminal action or brought an administrative penalty action, pursuant to the enforcement provisions of the CWA or comparable state law, to redress the alleged violations within sixty days of Plaintiffs' notices. *Id.* ¶ 6.

Therefore, on August 30, 2022, Plaintiffs filed their Complaint in this court on behalf of their members under the citizen-suit provisions of the CWA and SMCRA, alleging that Defendant (1) violated the CWA by discharging mining pollutants at Rush Creek Surface Mine No. 2 and KD Surface Mine No. 1 without an NPDES permit; (2) violated the CWA by failing to satisfy reporting requirements under WV/NPDES Permit No. 1019121 at the Rush Creek Surface Mine; and (3) violated the SCMRA through this same conduct. *Id.* ¶¶ 68–88. On July 25, 2023, Plaintiffs and Defendant both filed Motions for Summary Judgment. [ECF Nos. 18 and 20, respectively]. Each party has responded and replied in kind to each cross-motion. [ECF Nos. 23–26]. The motions are now ripe for decision.

## II. Legal Standards

### A. Declaratory Judgment

Under the Declaratory Judgment Act, a district court may, in a case or controversy otherwise within its jurisdiction, "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment action "is

appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir. 1937)).

### B.    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.,* 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.,* 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading[ ] but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in [their] favor." *Id.*

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted). In "considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.*

## III.   Discussion

In their motion, Plaintiffs argue they are "entitled to judgment as a matter of law" for all claims as they relate to Rush Creek Surface Mine and Rush Creek Surface Mine No. 2, respectively, because Defendant (1) discharged pollutants at Rush Creek Surface Mine No. 2 without a valid NPDES permit; (2) violated the conditions of WV/NPDES Permit No. WV1019121 by "failing to conduct the requisite monitoring and reporting for chronic whole effluent toxicity" at Rush Creek Surface Mine; and (3) violated performance standards of the SCMRA. [ECF No. 18, at 2]. Defendant, meanwhile, contends that because it is now in compliance with the terms and

conditions of a valid permit, no case or controversy exists and Plaintiffs claims are moot. [ECF Nos. 20, 23].

### A.    Jurisdiction

Before reaching the merits of the parties' arguments for summary judgment, I must first ascertain whether Plaintiffs have satisfied all requirements to bring a citizen suit under the CWA and SMCRA. These jurisdictional requirements include providing sixty days' notice to the Defendant and specified agencies, *see* 30 U.S.C. § 1270(b); 33 U.S.C. § 1365(b), as well as establishing Plaintiffs' good faith believe that Defendant was in either continuous or intermittent violation of the statutes at the time the suit was filed, *see Fola Coal Co.*, 2013 WL 6709957, at *22.

### 1.    Notice

"Under the CWA and SMCRA, no citizen suit may be commenced prior to the provision of sixty days' notice to the alleged violator, the Administrator of the EPA (for CWA citizen suits) or the Secretary of the Department of the Interior (for SMCRA citizen suits), and the State in which the alleged violation occurs." *Fola Coal Co.*, 2013 WL 6709957, at *21 (first citing 30 U.S.C. § 1270(b)(1)(A); and then citing 33 U.S.C. § 1365(b)(1)(A)). Providing notice "is a mandatory condition precedent to filing suit under [the CWA]." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 399 (4th Cir. 2011) (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)). "Without adequate notice, the Court does not have subject matter jurisdiction

to hear the case." *Assateague Coastkeeper v. Alan & Kristin Hudson Farm*, 727 F. Supp. 2d 433, 437 (D. Md. 2010) (citation omitted).

To be adequate, the notice must contain "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated," including "the activity alleged to constitute a violation, the person . . . responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a) (CWA notice requirements); *see also* 30 C.F.R. § 700.13(e) (SMCRA notice requirements). In short, the notice should "allow a potential defendant to identify its own violations and bring itself into compliance voluntarily." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 488 (2d Cir. 2001) (citations omitted); *S. F. Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002) ("[A]s long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter . . . need only provide enough information that the defendant can identify and correct the problem.").

In this case, the parties do not dispute that Plaintiffs have provided adequate sixty days' notice to satisfy their statutory obligations under the CWA and SMCRA. On February 15, 2022, Plaintiffs provided the required notice of Defendant's alleged violations and their intent to file suit to all necessary parties. [ECF No. 1, ¶ 5].

Plaintiffs then filed suit on August 30, 2022, well over sixty days past the date notice was provided. *Id.*

        2.     Evidence of Violations

"Under 33 U.S.C. § 1365, citizens are empowered to commence civil actions against any entity that fails to comply with the requirements of the [CWA]," including "a discharger that fails to comply with either the substantive effluent limitations contained in the [CWA] . . . or with the terms of its NPDES permit." *Menzel*, 712 F.2d at 94. Likewise, the SMCRA provides that "any person having an interest which is or may be adversely affected may commence a civil action . . . to compel compliance . . . against any other person who is *alleged to be in violation* of any rule, regulation, order or permit issued pursuant to this subchapter." 30 U.S.C. § 1270(a) (emphasis added). The phrase "alleged to be in violation," which appears in both citizen-suit provisions, has been interpreted by the Supreme Court to require "that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987). However, "[t]he issue of what evidence must be shown for jurisdictional purposes is distinct from what evidence must be shown for a defendant to ultimately be held liable for a violation of the CWA and SMCRA." *Fola Coal Co.*, 2013 WL 6709957, at *22 (citation omitted).

"To meet the jurisdictional requirements, Plaintiffs must show that at the time they filed suit, they had a good-faith belief that Defendant was in continuous or intermittent violation of the CWA and SMCRA." *Id.* "In a jurisdictional sense, then,

18

this good-faith belief is an element of Plaintiff's claim." *Id.* "[T]he test of good faith is whether it appears to be a 'legal certainty' that the jurisdictional fact is not satisfied." *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 611 F. Supp. 1542, 1549 n.8 (E.D. Va. 1985), *aff'd*, 791 F.2d 304 (4th Cir. 1986), *vacated sub nom. on different grounds*, *Gwaltney of Smithfield, Ltd.*, 484 U.S. 49 (1987).

In this case, Plaintiffs allege that Defendant was (1) continually discharging mining pollutants at Rush Creek Surface Mine No. 2 and KD Surface Mine No. 1 without a valid WV/NPDES Permit, and (2) continually failing to conduct and report required tests under the existing permit for Rush Creek Surface Mine. [ECF No. 1, ¶¶ 68–81]. It is undisputed that as of the date of the Complaint, Defendant had no valid permit allowing discharges at either Rush Creek Surface Mine No. 2 or KD Surface Mine No. 1 as alleged by Plaintiff. *Id.* ¶¶ 43, 56, 69. And there was no guarantee at that time that any such permit would ultimately be issued. Additionally, despite having a valid permit for Rush Creek Surface Mine since November 2021, it is undisputed that Defendant failed to comply with the permit terms on several occasions prior to the filing of the Complaint by not conducting or reporting required testing. *Id.* ¶¶ 77–81. Because Plaintiffs satisfy the good-faith belief requirement, I cannot find it "a 'legal certainty' that the jurisdictional fact is not satisfied." *Chesapeake Bay Found.*, 611 F. Supp. 2d at 1549 n.8. Having found jurisdiction, I

now turn to whether, in fact, Plaintiffs have proven, or can prove, actual violations of the CWA and SMCRA.

## B.  Evidence of Violations

The Fourth Circuit has held that "[c]itizen-plaintiffs may [prove ongoing violations] *either* (1) by proving violations that continue on or after the date the complaint is filed, *or* (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171–72 (4th Cir. 1988) (emphasis added). "[I]f a continuing violation is established, the company is liable for relief." *Fola Coal Co.*, 2013 WL 6709957, at *24.

### 1.    Claim I –Unpermitted Discharges (Rush Creek Surface Mine No. 2 & KD Surface Mine No. 1)

According to Plaintiffs, "[d]ischarges from [mines] are a result of precipitation and groundwater at the mine site[s] and therefore cannot simply be shut off when operations are paused or cease." [ECF No. 1, ¶ 41]. "Precipitation and groundwater continue to move through the areas disturbed by mining on site," resulting in continued discharge of mining pollutants into nearby waters. *Id.* This, Plaintiffs

argue, is what occurred at both Rush Creek Surface Mine No. 2 and KD Surface Mine No. 1 while waiting for approval of Major Modification No. 13.

> a. *Rush Creek Surface Mine No. 2*

Plaintiffs first claim that Defendant violated the CWA by allowing discharges of mining pollutants at Rush Creek Surface Mine No. 2 without a valid WV/NPDES permit. [ECF No. 1, ¶ 68–74]. I agree.

The CWA "is a strict liability statute." *Congaree Riverkeeper, Inc. v. Carolina Water Serv. Inc.*, 248 F. Supp. 3d 733, 749 (D. S.C. 2017). As such, "there is simply no causation requirement in the statute." *W. Va. Highlands Conservancy, Inc.*, 625 F.3d at 167. It "contains no exceptions for . . . reclamation efforts; to the contrary, it explicitly includes them within its scope." *Id.* at 161. "Under the CWA, it does not matter that a mining company may have created the conditions that call for reclamation." *Id.* at 161. Rather, "[w]hat matters is that an entity, private or public, is currently discharging pollutants into the waters of the United States." *Id.* "[T]he statute takes the water's point of view; water is indifferent about who initially polluted it so long as pollution continues to occur." *Id.* at 167. Therefore, Defendant's intentions—good though they may be—will not shield Defendant from liability under the CWA.[6] *See Menzel*, 712 F.2d at 94 ("[T]here is no shield from the requirement that all discharges—at the time made—must be pursuant to an NPDES permit.").

On March 24, 2021, when Defendant and Mr. Scholl executed a lease, Defendant became the legal operator or superintendent of the mine site. That is not

---

[6] Defendant repeatedly argues that it was formed specifically to perform reclamation work and was not, in any way, engaged in the surface coal mining that created the need for reclamation. [ECF No.

to say that Defendant engaged in coal mining on the site, but simply that it assumed responsibility for both the site and the permits necessary to bring it into compliance with the CWA. *See* 40 C.F.R. § 122.21(b) ("When a facility or activity is owned by one person but is operated by another person, it is the operator's duty to obtain a permit."); *see also Menzel*, 625 F.3d at 167 ("[W]here . . . the mine owner generates pollution but then abandons the site, the subsequent operator is the party responsible for obtaining a permit"). When the lease was executed, no active WV/NPDES permit existed for Rush Creek Surface Mine No. 2, the prior permit—Permit No. WV 1021745—having expired one year earlier, on March 8, 2020. [ECF No. 1, ¶ 37]. Indeed, the outlets and monitoring stations at Rush Creek Surface Mine No. 2 remained without an active WV/NPDES permit from March 2020 until Major Modification No. 13 was issued in April 2023, over two years after Defendant's lease began. [ECF No. 19, at 8].

Plaintiffs in this case, however, seek relief only for those discharges that occurred from November 2021—when the Reclamation Transition Agreement was executed—through "at least February 2023." [ECF No. 19, at 9]. Therefore, in

---

5, ¶¶ 27, 39, 51; ECF No. 20 at 4; ECF No. 21 at 1, 2, 5, 7; ECF No. 23 at 2–3, 5–6, 8–9, 11–16; ECF No. 24 at 1–2, 4]. I recognize that that finding third-party reclamation companies liable for violations in actions such as this may deter third parties from voluntarily performing reclamation work on abandoned surface mines in the future. But the laws are clear, and this court must adhere to them.

> [W]e are not in the business of rewriting laws whenever parties allege it is difficult to comply with them. . . . Any time Congress imposes a permit scheme, some regulated entities will complain that the permits impose onerous costs and will lead to all manner of hazardous consequences. Here, Congress has determined that a permitting scheme is the crucial instrument for protecting natural resources. It is for Congress to weigh the consequences of compliance with the laws it enacts. In passing the NPDES scheme, Congress considered the costs and decided that the benefits were worth it. If Congress somehow struck the balance wrong, it is for Congress to correct it.

*W. Va. Highlands Conservancy*, 625 F.3d at 169–70.

determining whether Defendant discharged pollutants without an NPDES permit, I must break the timeline of events down into two segments. I will first analyze the period between November 26, 2021, when Defendant executed the Reclamation Transition Agreement, and April 14, 2023, when modified WV/NPDES Permit No. WV1019121 was issued. Then, I must examine the period after the modified permit became effective up to the present date.

i.   November 26, 2021–April 14, 2023

As discussed above, Defendant was the legal operator or superintendent of Rush Creek Surface Mine No. 2 by the time the Reclamation Transition Agreement was executed on November 26, 2021. Evidence supplied by Plaintiffs "demonstrates that discharges from the Rush Creek No. 2 Surface Mine [made] their way into Rush Creek, the Right Fork of Rush Creek, and unnamed tributaries thereof." [ECF No. 19 at 10; *see, e.g.,* ECF No. 18-9 (monitoring reports required under SMCRA Permit No. S300404 for October 2021 through February 2023); ECF No. 18-15 (a list of discharges from Rush Creek Surface Mine No. 2)].

Defendant does not deny that the alleged discharges occurred. In fact, it admits that violations have occurred since November 2021. *See* [ECF No. 23 at 12 ("[E]very action that Keystone has undertaken from the date of its inception has been taken in good faith to *lessen the number, severity and impact of any discharges* or emissions from the subject properties.") (emphasis added); ECF No. 20 at 4 ("At all times relevant herein, the Defendant was . . . *attempting to correct the violations on the properties identified in the Complaint . . . .*") (emphasis added); ECF No. 25 at 4 ("The

violations of which the Plaintiffs complain are minor, *having only occurred since the Defendant took on the Revelation defaults . . . .*")]. As such, any discharges that occurred between November 26, 2021, and April 14, 2023, constitute violations of the CWA. Defendant, as the operator or superintendent of Rush Creek Surface Mine No. 2, is liable for those violations.

ii.     April 14, 2023–Present

Although Defendant does not deny that discharges occurred between November 26, 2021, and April 14, 2023, it does dispute Plaintiffs' claims that it *continues* to operate without a valid NPDES permit. In their motion, Plaintiffs contest the validity of the modified WV/NPDES Permit No. WV1019121, arguing that the WVDEP failed to follow proper protocol in approving Major Modification No. 13. [ECF No. 19 at 1 ("Keystone does not hold a *valid* WV/NPDES permit for Rush Creek No. 2 . . . ."); *id.* at 8 ("This permit modification and 'transfer' of point sources from the expired permit to a wholly separate, existing permit is clearly invalid and violates the CWA."). Defendant, however, rightly asserts that the validity of WV/NPDES Permit No. WV1019121 is not—and, indeed, could not be—at issue in this case.

The collateral attack doctrine prohibits a plaintiff from "directly attacking an underlying permit decision." *Sierra Club v. Va. Elec. & Power Co.*, 145 F. Supp. 3d 601, 605 (E.D. Va. 2015) (citing *Apogee Coal Co., LLC*, 531 F. Supp. 2d at 759). "The ultimate question regarding whether this is a collateral attack is whether plaintiff is essentially challenging the validity of the permit." *Id.* at 606. "A citizen suit alleging a violation of a valid permit is a separate and distinct action from one that challenges

24

the very validity of the permit. The former . . . is permissible in our federal courts. The latter constitutes an impermissible collateral attack." *Id.* In determining whether Plaintiff's claims lodge an impermissible collateral attack, I first note that Plaintiffs filed their Complaint in this case on August 30, 2022, several months before WV/NPDES Permit No. WV1019121 was modified. [ECF No. 1]. Plaintiffs' issue is not with the permit as it originally existed, but rather with the validity of the modification. On August 30, 2022, there had been no modification. Because Plaintiffs' suit "could not have been a collateral challenge to an order that was not yet issued," *Apogee Coal Co., LLC*, 531 F. Supp. 2d at 755, their claims are best characterized as a traditional citizen suit.

However, insofar as Plaintiffs attempt to attack the validity of the permit in its *subsequent* filings, the court declines to take the bait. To the extent that Plaintiffs' claims relate to the period after the modified WV/NPDES Permit No. WV1019121 was issued on April 14, 2023, such claims clearly constitute an attack on the validity of the modified permit. Accordingly, the Court will not consider this impermissible collateral attack. Unless and until Plaintiff prevails in a separate suit invalidating the permit at issue, Defendant's discharges at Rush Creek Surface Mine No. 2 for the period after April 14, 2023, cannot be considered unpermitted. As such, I cannot find Defendant to be in continual violation of the CWA.

### b.    *KD Surface Mine No. 1*

Defendant next moves for summary judgment on Claim I, arguing that the modification of WV/NPDES Permit No. WV1019121 and subsequent compliance with

the terms of the modified permit mooted Plaintiffs' claims related to KD Surface Mine No. 1. [ECF No. 20]. Plaintiffs do not address this mine site directly in their own motion, [ECF No. 19], or in their response to Defendant's motion, [ECF No. 24].[7] As such, I will address this mine only as to Defendant's mootness argument.

Like with the discharges at Rush Creek Surface Mine No. 2, any discharges that occurred at the KD Surface Mine No. 1 site during the period from November 26, 2021, through April 14, 2023, would be unpermitted and in violation of the CWA. Contrary to Defendant's argument, the issuance of the modified permit does not negate these violations. Therefore, Defendant's mootness argument related to this mine is without merit, and Plaintiffs' claims regarding KD Surface Mine No. 1 remain pending.

### 2. Claim II –Reporting Violations (Rush Creek Surface Mine)

Plaintiffs next argue that Defendant violated the terms and conditions of WV/NPDES Permit No. WV1019121, both pre- and post-modification, by failing to perform and report "quarterly chronic whole effluent toxicity tests ('WET tests') on the effluent" from a key outfall of the Rush Creek Surface Mine between November 2021 and August 2023. [ECF No. 19 at 10]. I agree.

When examining CWA violations under an existing permit, "a court must determine which permit applies, the terms of the applicable permit, and whether Defendant violated those terms." *Congaree Riverkeeper, Inc.*, 248 F. Supp. 3d at 749.

---

[7] In their Memorandum in Support, [ECF No. 19], Plaintiffs state that they "move for summary judgment on each of the three counts in their complaint," but specify in the next paragraph that they "seek summary judgment for the Rush Creek and Rush Creek No. 2 Surface Mines." *Id.* at 1.

In this case, the applicable permit is WV/NPDES Permit No. WV1019121, which was active for Rush Creek Surface Min at all relevant times. [ECF No. 1, ¶¶ 59–63]. I must, therefore, look to the conditions of this permit to determine whether Defendant violated it.

WV/NPDES Permit No. WV1019121 requires Defendant to perform quarterly chronic WET tests on Outfall 004, with results to be "submitted with the corresponding monthly Discharge Monitoring Report (DMR)," [ECF No. 18–1, at 36], "no later than 20 days after the end of [each] quarter," [ECF No. 1, ¶ 64]. Plaintiffs claim that for the seven quarters in which WET testing should have been performed, "Keystone has only conducted WET testing once in November/December 2022 for Outfall 004." [ECF No. 19, at 10–11; ECF No. 24, at 8]. And, notably, that test "exceeded the permit limits." [ECF No. 24, at 8; *see* ECF No. 18-12, at 13–16 (establishing limits for Permit No. 1019121); ECF No. 18-13 (the test results for November/December 2022)].

Defendant, again, does not dispute this allegation as to certain quarters pre-dating the modification of WV/NPDES Permit No. WV1019121, namely for the period of November 2021 through November 2022. Rather, Defendant seems to imply that that it was unaware that it was required to continue conducting and reporting WET tests while the permit modification was pending, and further, and that its current compliance renders the issue moot. *See* [ECF No. 21, at 4 ("[N]ow that Keystone is aware of the modified standards, terms and conditions contained in the modified

Permit . . . Keystone has worked to bring the Rush Creek Surface Mine into full compliance.")]. I find this explanation unconvincing.

WV/NPDES Permit No. WV1019121 has been in effect at all relevant times and clearly requires Defendant to conduct and report quarterly WET tests. [ECF No. 18-1, at 36]. Despite its suggestions otherwise, Defendant was not released from its requirement to comply with the terms and conditions of the original permit when it applied for modification. *See* 40 C.F.R. § 122.41(f) ("The filing of a request by the permittee for a permit modification . . . does not stay any permit condition."). Ultimately, Defendant's subjective intent ad its reasons for noncompliance are irrelevant. As noted already, the CWA "is a strict liability statute." *Congaree Riverkeeper, Inc.*, 248 F. Supp. 3d at 749. It is, therefore, unnecessary to delve into *why* a violation occurred, but rather only *whether* a violation occurred. And here, it did. Defendant was obligated to conduct and report quarterly WET tests on the Rush Creek Surface Mine as a condition of its existing permit. It failed to do so, thereby violating the CWA, and is liable for those violations.

3.   Claim III – SMCRA Violations (Rush Creek Surface Mine & Rush Creek Surface Mine No. 2)

Finally, Plaintiffs argue that the above-described violations of the CWA also constitute violations of the SMCRA. I concur.

The SMCRA "sets forth no less than twenty-five '[g]eneral performance standards . . . applicable to all surface mining and reclamation operations . . . .'" *Sierra Club v. Powellton Coal Co., LLC*, 662 F. Supp. 2d 514, 534 (S.D. W. Va. 2009) (quoting 30 U.S.C. § 1265(b)). Defendant's SMCRA permit also mandates compliance with

West Virginia's federally approved performance standards, "which in turn require compliance with all applicable state and federal water quality laws, standards, and regulations." *S. Appalachian Mt. Stewards v. Red River Coal Co.*, 420 F. Supp. 3d 481, 497 (W.D. Va. 2019). Under these regulatory schemes, each violation of the CWA is, in turn, a violation of the SMCRA. *See* 30 U.S.C. § 1270(a). Defendant, therefore, violated the SMCRA by allowing unpermitted discharges at Rush Creek Surface Mine No. 2 for the period between November 26, 2021, and April 14, 2023, and by failing to conduct and report required WET testing at Rush Creek Surface Mine. As such, it is liable for these violations.

###     C.     Entitlement to Relief

I am not in a position at this time to decide how many total violations of the CWA, SMCRA, and WVSCMRA have occurred. I will, therefore, leave resolution of that issue, as well as the imposition of any civil penalties, for a subsequent time. However, because it appears that Defendant is now in compliance with the terms of the applicable laws and its active permits for the Properties, I find that the injunctive relief requested by Plaintiff would no longer redress their concerns and **GRANT in part** Defendant's motion for summary judgment on all claims as to injunctive relief only.

### IV.     Conclusion

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** Plaintiff's Motion [ECF No.18]. Specifically, the court **GRANTS** Plaintiffs' motion for partial summary judgment for declaratory relief and hereby **DECLARES** that

Defendant Keystone West Virginia, LLC violated both the CWA and SMCRA between November 26, 2021, and April 14, 2023, by discharging pollutants from Rush Creek Surface Mine No. 2 without a valid permit. The court further **DECLARES** that from November 2021 through November 2022, Defendant Keystone West Virginia, LLC violated the CWA and SMCRA by failing to satisfy the reporting requirements of WV/NPDES Permit No. WV1019121 for Rush Creek Surface Mine. The court cannot find, however, that Defendant is in continuing violation of the CWA and SMCRA, as it now has a permit for all outfalls and monitoring stations and is submitting the reports required under that permit. Therefore, injunctive relief is **DENIED** as to Rush Creek Surface Mine No. 2 and Rush Creek Surface Mine. The court **holds in ABEYANCE** Plaintiffs' claims as to the number of violations and for civil penalties.

The court further **GRANTS in part** and **DENIES in part** Defendant's Motion [ECF No. 20]. Specifically, the court **GRANTS** Defendant's motion precluding injunctive relief on all three Counts but **DENIES** Defendant's motion as to liability on Count I with regard to Rush Creek Surface Mine No. 2 and Count II with regard to Rush Creek Surface Mine. Plaintiffs' claims for declaratory relief and civil penalties regarding KD Surface Mine No. 1 remain pending.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      OCTOBER 4, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

30